UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| LAFREDERICK LITTLE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 25-10392-FDS |
| MASSACHUSETTS DEPARTMENT OF CHILDREN AND FAMILIES, et al., | ) ) ) | |
| Defendants. | ) ) ) | |

MEMORANDUM AND ORDER

**SAYLOR, J.**

This is an action by a *pro se* plaintiff challenging an order of the Massachusetts Probate Court concerning a child-custody order.  Plaintiff LaFrederick Little seeks injunctive, declaratory, and monetary relief against various state officials in connection with that dispute. He has also filed a motion for leave to proceed *in forma pauperis*.  For the reasons set forth below, the Court will deny the motion for leave to proceed without prejudice and dismiss the action.

I.      **Motion for Leave to Proceed *in Forma Pauperis***

The fee for filing a non-habeas civil action is $405.  The court may permit a litigant to proceed without prepayment of that fee if he submits an affidavit that includes "a statement of all assets such [person] possesses," 28 U.S.C. § 1915(a)(1), showing that he cannot pay the fee and "still be able to provide himself and dependents with the necessities of life," *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948) (citation modified).

Here, plaintiff's description of his assets in his application is incomplete.  He provided his financial information using an Application to Proceed in District Court Without Prepayment

Fees or Costs. On the first page of the application, he reports his employment income and indicates that he does not have any other source of income. On the second page of the application, he represents that he does not have any money in a savings or checking account. However, he failed to respond to the remaining four questions on that page, including one that directs him to report any assets of value. Although his income level and lack of savings suggest that he is indigent, in the absence of complete information concerning plaintiff's assets, the Court cannot allow him to proceed *in forma pauperis*.

Accordingly, the motion for leave to proceed *in forma pauperis* is denied without prejudice. Nonetheless, for the reasons set forth below, the complaint will be dismissed.

## II.     Review of the Complaint

In general, a court does not conduct a preliminary review of a non-prisoner complaint unless the plaintiff has been permitted to proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(e) (providing for the review of a complaint of a plaintiff proceeding *in forma pauperis*). Nevertheless, a court must always consider whether it has subject-matter jurisdiction over the complaint. *See United States v. University of Mass., Worcester*, 812 F.3d 35, 44 (1st Cir. 2016) ("Federal courts are courts of limited jurisdiction. They cannot act in the absence of subject matter jurisdiction, and they have a sua sponte duty to confirm the existence of jurisdiction in the face of apparent jurisdictional defects.") In addition, a court has inherent authority to dismiss *sua sponte* any claims that are based on an "indisputably meritless legal theory," such as "claims against which it is clear that the defendants are immune from suit" or "claims of infringement of a legal interest which clearly does not exist." *Nietzke v. Williams*, 490 U.S. 319, 327 (1989).[1]

---

[1] A complaint that "lacks an arguable basis either in law or in fact" is considered "frivolous." *Nietzke*, 490 U.S. at 325. The court has inherent authority to dismiss a frivolous action without giving prior notice to the plaintiff. *See Budnick v. Doe*, 2015 WL 13928988, at *1 (1st Cir. Jan. 6, 2015) (concluding that "the district court appropriately dismissed the complaint based on its inherent authority to dismiss frivolous or malicious actions");

### A.    The Allegations of the Complaint

The complaint characterizes this action as "a civil rights action under 42 U.S.C. § 1983 seeking relief for the unlawful removal of Plaintiff's children without due process, denial of a timely 72-hour hearing under Massachusetts law, and prolonged deprivation of parental rights." (Compl. ¶ 1).  It alleges that "[o]n April 27, 2023, [his] children were removed without due process, without evidence of abuse or neglect, and without imminent danger."  (*Id.* ¶ 10).  It alleges that under Mass. Gen. Laws ch. 119, § 24, "a hearing was required within 72 hours, yet none took place."  (*Id.* ¶ 11).  It alleges that plaintiff "appeared in court on May 1, 2023, but the judge refused to proceed, stating an attorney was required," and that "[n]o hearing was held until June 5, 2023—over a month past the statutory deadline."  (*Id.* ¶ 12).  And it alleges that his "court-appointed attorney failed to object to this violation, file necessary motions, or demand immediate relief, effectively assisting the state in violating [his] rights."  (*Id.* ¶ 13).

The caption of the complaint names as defendants the Massachusetts Department of Children and Families ("DCF"), DCF social workers Hannah White and Alyssa Bristol, Judge Anthony Marotta, and Clerk Magistrate Brendan J. Moran.  The body of the complaint also identifies plaintiff's court-appointed attorney Susan J. Cutelis as a defendant.  (*Id.* ¶ 9).

The complaint asserts two counts under 42 U.S.C. § 1983.  Count One alleges that the defendants deprived plaintiff of his "fundamental right to the care, custody, and control of [his] children" by "removing the children and failing to provide a timely hearing."  (*Id.* ¶¶ 14-15).  Count Two alleges that Cutelis, "by failing to object to the delay of the 72-hour hearing and

---

*Brockton Sav. Bank. v. Peat, Marwick, Mitchell & Co.*, 771 F.2d 5, 11 n.5 (1st Cir. 1985) ("We long ago recognized 'the inherent and necessary power of courts of general jurisdiction to protect members of the public from vexatious suits through an exercise of the right to dismiss frivolous proceedings.'" (quoting *O'Connell v. Mason*, 132 F. 245, 247 (1st Cir. 1904))).

refusing to advocate for Plaintiff, acted jointly with the state to deny Plaintiff due process." (*Id.*
¶¶ 16-17).

In the prayer for relief, the complaint seeks compensatory and punitive damages,
"[i]mmediate injunctive relief ordering the return of Plaintiff's children," an a "declaratory
judgment stating that Defendants violated Plaintiff's constitutional rights." (*Id.* at 3).

## B.  Discussion

### 1.  Sovereign Immunity

Any claim against DCF fails because the agency has broad immunity from suit.  States
(including state agencies such as DCF) generally possess sovereign immunity from being sued
for damages without their consent except where Congress has abrogated that immunity.  *See
Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253-54 (2011).  Here, Massachusetts
has not waived, and Congress has not abrogated, the state's immunity with regard to plaintiff's
claims. [2]  Therefore, plaintiff's claims against DCF itself are barred by sovereign immunity.

### 2.  Judicial Immunity

Any claims against Judge Marotta and Clerk Magistrate Moran are barred by judicial
immunity.  Judges are immune "from liability for damages for acts committed within their
judicial jurisdiction . . . even when the judge is accused of acting maliciously and corruptly."
*Pierson v. Ray*, 386 U.S. 547, 554 (1967); *see also Zenon v. Guzman*, 924 F.3d 611, 616–17 (1st
Cir. 2019) ("[I]t is an axiom of black letter law that when a judge carries out traditional
adjudicatory functions, he or she has absolute immunity for those actions.  And, the Supreme
Court has recognized that judicial immunity applies in the context of suits . . . that are brought

---

[2] In addition, a state (including its agencies) is not a "person" subject to suit under § 1983. *See Will v.
Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

under § 1983." (citation omitted)).  In the context of a § 1983 claim, injunctive relief against a

judge is only available if "a declaratory decree was violated or declaratory relief was

unavailable," 42 U.S.C. § 1983, a circumstance not present here.  Therefore, the claims against

Judge Marotta are barred.

Furthermore, although Clerk Magistrate Moran is named as a defendant, the complaint

does not include any factual allegations about him.  And even if it did, such claims would likely

be barred by quasi-judicial immunity, which "provides absolute immunity for those who perform

tasks that are inextricably intertwined with the judicial function."  *Nystedt v. Nigro*, 700 F.3d 25,

30 (1st Cir. 2012).  Courts have recognized that Massachusetts clerk-magistrates are generally

entitled to this immunity when performing their official functions.  *See Clapp v. Cohen*, 2019

WL 5864752, at *3 (D. Mass. Nov. 8, 2019) (collecting cases).

### 3.  Doctrines Regulating the Relationship between State and Federal Courts

Finally, the claims against the remaining defendants fail for one of several reasons.  They

may be barred by the domestic-relations exception to federal jurisdiction, although it is an open

question whether this exception applies in federal-question cases, such as this one, as well as

diversity cases.  But depending on the status of the underlying state-court proceeding—as to

which the complaint is silent—this Court cannot hear these claims, either because of the doctrine

of *Younger* abstention or the *Rooker-Feldman* doctrine.

#### a.  Domestic-Relations Exception

As a general matter, under the domestic-relations exception to federal jurisdiction, federal

courts do not have authority to hear cases involving family-law issues that fall within the

traditional authority of the states.  *See Barber v. Barber*, 62 U.S. 582, 584 (1858) ("We disclaim

altogether any jurisdiction in the courts of the United States upon the subject of divorce, or for

the allowance of alimony . . . .”); *In re Burrus*, 136 U.S. 586, 593-94 (1890) (“The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States.”).

It is an open question in this Circuit whether the domestic-relations exception applies only to matters where jurisdiction is based on diversity of citizenship or whether it extends to federal-question cases as well.  *See Mandel v. Town of Orleans*, 326 F.3d 267 (1st Cir. 2003) (“[T]he courts are divided as to whether the [domestic-relations exception] is limited to diversity claims and this court has never decided that issue.”).[3]  The Court notes, however, that the “sound policy considerations” underlying the domestic-relations exception apply just as forcefully in this case as in one where the court’s jurisdiction was founded on diversity.  *See Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992).  Such considerations include that “state courts are more eminently suited to work of this type than are federal courts, which lack the close association with state and local government organizations dedicated to handling issues that arise out of conflicts over divorce, alimony, and child custody decrees.”  *Id.* at 704.  However, because the applicability of the domestic-relations exception is unresolved in this Circuit, the Court will not dismiss the claims on that ground.

### b.　*Younger* Abstention

If the state-court custody proceeding is still ongoing, then this Court must abstain from hearing the case under the doctrine of *Younger* abstention.  “Abstention is a device designed to facilitate the side-by-side operation of federal and state courts, balancing their respective

---

[3] The leading view in other circuits is that that the exception applies only in diversity-jurisdiction cases. *See* RICHARD H. FALLON, JR. ET AL., HART & WECHSLER’S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 1189 (7th ed. 2015) (“[T]he predominant view among the lower courts is that the domestic relations exception applies only to the diversity jurisdiction.”).

interests in the spirit of comity." *Coggeshall v. Massachusetts Bd. of Registration of Psychs.*, 604 F.3d 658, 664 (1st Cir. 2010). "Except in the most extraordinary cases, a federal court must presume that state courts, consistent with the imperatives of the Supremacy Clause, are fully competent to adjudicate federal constitutional and statutory claims properly presented by the parties." *Casa Marie, Inc. v. Superior Ct.,* 988 F.2d 252, 262 (1st Cir. 1993) (citation and footnote omitted).

Under the doctrine of *Younger* abstention, *see Younger v. Harris*, 401 U.S. 37 (1971), "a federal court must abstain from hearing a case if doing so would 'needlessly inject' the federal court into ongoing state proceedings." *Coggeshall*, 604 F.3d at 664 (quoting *Brooks v. New Hampshire Sup. Ct.*, 80 F.3d 633, 637 (1st Cir. 1996)). "Although the *Younger* case itself dealt with federal interference in an ongoing state criminal prosecution, *Younger* principles apply to noncriminal state proceedings that are judicial in nature," *id.* (citation omitted), such as state-initiated proceedings to gain custody of children in need of care, *see Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 79 (2013). *Younger* abstention is even appropriate where litigants "claim violations of important federal rights," *In re Justices of Superior Ct. Dep't of Mass. Trial Ct.*, 218 F.3d 11, 17 (1st Cir. 2000), so long as the federal claims can be "raised and resolved somewhere in the state process," *Maymó-Meléndez v. Álvarez-Ramírez*, 364 F.3d 27, 36 (1st Cir. 2004).

Here, the Court would "needlessly inject" itself into the state-court proceeding if it were to consider whether plaintiff's rights have been violated during the care and custody proceeding. Therefore, to the extent, if any, that this Court has subject-matter jurisdiction, it must abstain from exercising that jurisdiction if the state-court proceeding is still ongoing.

          **c.**      ***Rooker-Feldman* Doctrine**

If the state-court proceeding has concluded, the *Rooker-Feldman* doctrine prevents this Court from exercising jurisdiction to review the final judgment resulting from those proceedings. Absent certain exceptions not present here, "the only federal court with statutory jurisdiction to review a state court's judgment is the Supreme Court." *Tyler v. Supreme Jud. Ct..*, 914 F.3d 47, 50 (1st Cir. 2019); *see* 28 U.S.C. § 1257. Therefore, the *Rooker-Feldman* doctrine provides, "an aggrieved litigant cannot be permitted to do indirectly what he no longer can do directly." *Id.* (quoting *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923)). Thus, if the state-court proceeding has been resolved, this Court has no jurisdiction to review the judgment of the state-court proceeding.

## III.    Conclusion

As set forth above, the claims in this matter must be dismissed for a variety of reasons, including sovereign immunity, judicial immunity, abstention, and/or lack of subject-matter jurisdiction. Accordingly, and for the foregoing reasons:

1.      The motion for leave to proceed *in forma pauperis* is DENIED without prejudice.

2.      This matter is DISMISSED for failure to state a claim on which relief can be granted.

**So Ordered.**

                    /s/ F. Dennis Saylor IV
                    F. Dennis Saylor IV
Dated:  October 29, 2025        United States District Judge